# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **JOHN DIMOFF,**<br>8309 E Van Buren Drive<br>Pittsburgh, PA 15237<br><br>            Plaintiff<br><br>        v.<br><br>**COUNTY OF ALLEGHENY,**<br>**PENNSYLVANIA**<br>436 Grant Street<br>Pittsburgh, PA 15219<br>            Defendant<br><br><br><br>January 30, 2023 | DOCKET NO.: 2:23cv142<br><br>JURY TRIAL DEMANDED<br><br>TYPE OF PLEADING<br><br>**COMPLAINT**<br><br>FILED ON BEHALF OF<br><br>**JOHN DIMOFF**,<br>Plaintiff<br><br>John A. Daller, Esquire<br>PA Bar No. 329356<br>Daller Law Firm<br>PO Box 162<br>510 Pittsburgh Street<br>Mars, PA 16046<br>(724) 201-2050<br>johndaller@daller-law.com |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN DIMOFF**, | ) |
| Plaintiff | ) DOCKET NO.: _____ |
| | ) Jury Trial Demanded |
| v. | ) |
| **COUNTY OF ALLEGHENY**, **PENNSYLVANIA** | ) |
| Defendant | ) |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

This is a civil action seeking damages against a government employer for committing acts which deprived Plaintiff of rights secured by the laws of the United States and of the Commonwealth of Pennsylvania when Defendant refused to grant Plaintiff a religious exemption from its mandatory COVID-19 vaccination policy because it failed to consider and refused to offer reasonable accommodations, and acted disparately against him by practice and pattern compared to other similarly situated employees because of his sincerely held religious beliefs.

## PARTIES TO THIS COMPLAINT

1. Plaintiff, John Dimoff, an individual, is a resident of Allegheny County, Pennsylvania and resides at 8309 E Van Buren Drive Pittsburgh, Pennsylvania 15237.

2. Defendant, County of Allegheny, is a political subdivision of the Commonwealth of Pennsylvania with its headquarters and principal place of business in Allegheny County, Pennsylvania, located at 436 Grant Street Pittsburgh, Pennsylvania 15219.

3. Plaintiff has been employed continuously since August 26, 2013, by the Defendant as an Electrician prior to his termination.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this matter pursuant to Title VII of the Civils Rights Act of 1964 as codified, *42 U.S.C. §§ 2000e to 2000e-17*.

5. This Court has supplemental jurisdiction over Plaintiff's Pennsylvania Human Relations Act claim under *43 P.S. § 955(a)* pursuant to *28 USCS § 1367(a)* because it is so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this district under *28 U.S.C. §1391(b)(1)* because Defendant resides within this judicial district and under *28 U.S.C. § 1391(b)(2)* because Plaintiff suffered damages within the jurisdiction of the Eastern District of Pennsylvania.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

7. A claim (PHRC Case No. 202101657) was filed with the Pennsylvania Human Relations Commission regarding Defendant's discriminatory action on January 18, 2022. (**copy hereto attached as Exhibit A**)

8. The claim was secondarily filed to the Equal Employment Opportunity Commission by the primary state investigative agency and captioned as EEOC Case No. 17F202260516.

9. The Pennsylvania Human Relations Commission, through its Executive Director Chad Dion Lassiter, MSW, issued a Finding of No Probable Cause on April 26, 2022. (**copy hereto attached as Exhibit B**)

10. The Plaintiff submitted a Request for Preliminary Hearing to the Pennsylvania Human Relations Commission on May 9, 2022. (**copy hereto attached as Exhibit C**)

11. The Pennsylvania Human Relations Commission to date has failed to act upon the Request for Preliminary Hearing.

12. Plaintiff submitted a request for a Right To Sue Letter to the Equal Employment Opportunity Commission on December 30, 2022.

13. The United States Department of Justice Civil Rights Division issued a Notice of the right to institute a civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. 2000e*, et seq., on January 9, 2023. (**copy hereto attached as Exhibit D**)

## FACTUAL BACKGROUND

14. The Plaintiff is a practicing Roman Catholic.

15. The Plaintiff has been employed by the Defendant County of Allegheny since August 26, 2013, as an Electrician.

16. The Defendant employs more than twenty employees.

17. Defendant announced a mandatory COVID-19 vaccination requirement for employees on or around July 2021, requiring Plaintiff to be vaccinated by December 1, 2021.

18. Plaintiff requested a religious exemption based upon his sincerely held fundamental religious beliefs on October 12, 2021, and submitted a narrative statement that, in relevant parts, noted that he is called to purify himself from contamination because "his body is a Temple of the Holy Spirit", that he trusts "in the Lord because his Word promises that the Lord will keep my free from disease," based upon Deuteronomy 7:15, and that "Scriptures in the Holy Bible foreshadow of the COVID-19 pandemic and those who take the vaccine. . . to identify those who are loyal to the antichrist," based upon Revelation 13:17. Plaintiff also discussed a contemporary application of his belief, referencing the Harmonists who settled in Butler County, Pennsylvania and advocated celibacy in opposition to God's Word resulting in their extinction. (**copy hereto attached as Exhibit E**)

19. Defendant, through its agent, Deputy Director of Administration, Nancy DiNardo, notified Plaintiff on October 13, 2021, that a meeting with human resources was necessary to discuss the exemption request.

20. Plaintiff met with Defendant's agent, Ellen Buannic, Employee Relations Coordinator from the Department of Human Resources, on October 19, 2021.

21. Defendant's agent, Ellen Buannic, provided, the same day, an email summary of the meeting that stated, in relevant part "you believe *sincerely* (emphasis added) that your body is a temple, and you are compelled not to accept the vaccine by the Holy Spirit." **(copy hereto attached as Exhibit H)**

22. At no time did Defendant's agent, Ellen Buannic, ask Plaintiff about the reasonableness of the then currently employed precautions to mitigate against Covid-19 transmission as possible continuing accommodations or indicate the need to consider other accommodations in order to address the Defendant's exemption request.

23. Defendant's agent's, Ellen Buannic's, summary of the interactive process meeting does not indicate that the then current accommodations were causing the Defendant an undue hardship or that other accommodations would also not be possible.

24. During the course of the COVID-19 pandemic, the Plaintiff wore a mask, socially distanced, avoided prolonged contact with others, and submitted to interval testing as required by Defendant.

25. Plaintiff's position as an electrician required minimal interaction with others because of safety protocols and other precautions already mandated due to the nature of the work that were entirely independent of the COVID-19 pandemic.

26. Plaintiff had continuously and satisfactorily performed his duties during the pandemic while complying with the protocols and accommodations established by Defendant and, despite being the only electrician at his work location, was able to complete the required work.

27. Plaintiff received a letter from Defendant's agent and Director, Laura Zaspel, on October 22, 2021, indicating that the Plaintiff's request for a religious exemption from the mandatory COVID-19 vaccination policy was denied because any accommodation would pose an undue hardship upon the Defendant and "impair workplace safety, impair the safety of members of the public with whom you interact, cause co-workers to perform your share of duties, infringe upon other employees' job rights or benefits, and/or reduce overall workplace efficiency, among others." **(copy hereto attached as Exhibit I)**

28. Plaintiff received an undated Loudermill notice on November 24, 2021, informing him of a Loudermill hearing on November 29, 2021. **(copy hereto attached as Exhibit I)**

29. Plaintiff's counsel contacted Defendant's agents, Nancy DiNardo and Jake Lifson, regarding the Loudermill Hearing Letter's deficiency in satisfying notice requirements, inconsistencies in the terms of the letter making it impossible to comply, and the fact that Plaintiff was on scheduled leave the day of the hearing. **(copy hereto attached as Exhibit I)**

30. Defendant's agent, Nancy DiNardo stated that Plaintiff was expected attend the hearing, contrary to Loudermill rules, and indicated that she was deferring to Defendant's agent, Jake Lifson to respond **(copy hereto attached as Exhibit J)**

31. Defendant's agent, Jake Lifson, Esquire, did not respond.

32. Plaintiff's counsel notified Defendant that no response was received, and that Plaintiff would not attend the Loudermill Hearing, but rather would exercise his right to submit a written response. **(copy hereto attached as Exhibit K)**

33. Plaintiff received an updated Loudermill Hearing notice on November 30, 2021. **(copy hereto attached as Exhibit L)**

34. Plaintiff submitted a written response **(copy hereto attached as Exhibit M)** to the Loudermill Hearing notice on December 1, 2021, requesting to continue the current accommodations and challenging the Defendant's denial of the religious exemption request because no effort was made to consider whether reasonable accommodations for his religious exemption request were available, despite the fact that Defendant itself already had implemented the very accommodations Plaintiff was requesting.

35. Plaintiff received a letter from Defendant's agent, Nancy DiNardo, dated December 2, 2021, notifying him that his employment with Defendant County of Allegheny was terminated as of that date because of supposed "health risks" even though the Plaintiff had been performing the same tasks under the accommodation conditions proposed, and required by the Defendant, for over six months. **(copy hereto attached as Exhibit N)**

**COUNT ONE – RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII- FAILURE TO ACCOMMODATE**

36. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

37. Title VII makes it an unlawful practice for an employer to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's religion. *42 U.S.C. § 2000(e)-2(a).*

38. 29 CFR § 1605.2(b)(1) codifies Title VII Section 701(j) that makes it an unlawful employment practice under section 703(a)(1) for an employer to fail to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

39. The Third Circuit has adopted the following definition of religion that states: "[f]irst, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs."  *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981) quoted in *Fallon v. Mercy Catholic Med. Ctr.* 877 F.3d 487, 491 (3d Cir. 2017).

40. The sincerity of an employee's stated religious belief is usually not in dispute and is "generally presumed or easily established." *Moussazadeh v. Tx. Dep't of Crim. Just.*, 703 F.3d 781, 790 (5th Cir. 2012).

41. The individual's sincerity in espousing a religious observance or practice is "largely a matter of individual credibility." *Davis v. Ft. Bend Cnty.*, 765 F.3d 480, 486 (5th Cir. 2014) quoting *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013).

42. In the Third Circuit, employees may establish a claim for religious discrimination based upon a theory of "failure to accommodate" because of religion. *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 281 (3d Cir. 2001).

43. Where a Plaintiff brings a claim under a failure to accommodate theory, he must first establish a *prima facie* case of religious discrimination by establishing that: 1) he holds a

sincerely held religious belief that conflicts with a job requirement, 2) he informed her employer of the conflict, and 3) he was disciplined for failing to comply with the conflicting requirement. *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009).

44. Plaintiff is a practicing member of the Roman Catholic Faith.

45. Plaintiff follows the teachings of Jesus Christ and his belief system is founded upon the recordings found in the Holy Bible and the Catholic Catechism.

46. Roman Catholicism can be recognized by the presence of "certain formal and external signs."

47. Plaintiff has a fundamental sincerely held religious belief system founded in Roman Catholicism.

48. Plaintiff informed Defendant of his sincerely held religious beliefs and the conflict created by the Defendant's mandatory Covid-19 vaccination policy when he filed a religious exemption request.

49. Courts are not arbiters of scriptural interpretation; and by inference, neither are employers. *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981).

50. Defendant, through its agent, Ellen Buannic, conducted a meeting with Plaintiff.

51. Defendant's agent did not question the sincerity of the Plaintiff's sincerely held fundamental religious belief, stating in her summary, in relevant part, that "you believe ***sincerely*** (emphasis added) that your body is a temple, and you are compelled not to accept the vaccine by the Holy Spirit." **(see Exhibit F, *supra*)**

52. At no time did Defendant's agent, Ellen Buannic, ask Plaintiff about the reasonableness of the then currently employed accommodations or indicate the need to consider other

additional accommodations other than those accommodations and safety practices that were already being employed, in order to address the Plaintiff's exemption request.

53. Defendant's agent's, Ellen Buannic's, summary of the meeting, did not state that accommodations were not possible.

54. At no time was a effective interactive process meeting conducted to discuss whether accommodations could be provided.

55. Since an effective interactive process meeting did not occur, Defendant failed to engage with Plaintiff to determine whether accommodations were possible.

56. The only existing evidence at the time of the Defendant's denial of Plaintiff's religious exemption request was that the Plaintiff held sincere fundamental religious beliefs that conflicted with the Defendant's mandatory Covid-19 vaccination policy.

57. Despite his religious exemption request, the Defendant disciplined Plaintiff when it disqualified him from employment for not complying with its mandatory Covid-19 vaccination policy that conflicted with his fundamental sincerely held religious beliefs.

58. Plaintiff believes and therefore avers that Defendant discriminated against him on the basis of his religion by terminating his employment based upon his sincerely held religious beliefs.

59. It is believed and therefore averred that Defendant **uniformly** denied religious exemption requests from all employees by refusing to consider any possible accommodations.

60. It is believed and therefore averred that Defendant acted with malice and reckless indifference to the federally protected rights of Plaintiff when it illegally terminated his employment.

61. Plaintiff suffered damages from his illegal termination, including loss of wages and benefits, embarrassment, emotional distress, court costs, and legal fees.

62. Pursuant to *42 U.S.C. § 2000e-5(k)* and *42 U.S.C. § 1988(b)*, this Honorable Court may award the prevailing party reasonable attorney's fees as part of the costs.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award him damages in the form of lost wages and benefits, punitive damages, costs, attorney's fees, and interest, and order immediate reinstatement to his previous position under terms at least as favorable as available to him under his previous employment, or enter any other Order this Honorable Court finds to be in the interest of justice.

### COUNT TWO – RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII – DISPARATE TREATMENT

63. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

64. Under Federal law, it is illegal to treat employees differently based upon their religious beliefs. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

65. In order to present a claim of religious discrimination based upon disparate treatment, the Plaintiff must establish a *prima facie* case of discrimination. *Id*.

66. In order to establish a *prima facie* case of religious discrimination, the Plaintiff must establish that: 1) he was a member of a protected class, 2) he suffered an adverse employment action, and 3) similarly situated persons outside of the protected class were treated more favorably than him. *Abramson v. William Patterson College*, 260 F.3d 265, 281 (3d Cir. 2001).

67. In the Third Circuit, employees may establish a claim for religious discrimination based upon a theory of "disparate treatment" because of religion. *Id*.

68. In order to present a claim of disparate treatment once religious discrimination is established, a Plaintiff must "plead that a facially neutral practice's adverse effects fall disproportionately" on a protected class. *Powell v. Ridge*, 189 F.3d 387 (3d Cir. 1999).

69. Plaintiff is a practicing member of the Roman Catholic Faith.

70. Plaintiff has fundamental sincerely held religious beliefs.

71. Plaintiff was terminated from his position as an Electrician because of these fundamental sincerely held religious beliefs.

72. It is believed and therefore averred that other employees who were not religious but requested exemptions from the policy for other reasons, were not terminated because of the COVID-19 mandatory vaccination policy.

73. It is believed and therefore averred that additional individuals had their requests for religious exemptions denied and were all directly terminated or constructively terminated solely because of their sincerely held religious beliefs.

74. The adverse effect of termination disproportionately fell upon religious individuals, including Plaintiff, who exercised their religious beliefs and requested religious exemptions, but whose exemption requests were uniformly denied.

75. It is believed and therefore averred that Defendant acted with malice and reckless indifference to the federally protected rights of Plaintiff.

76. Plaintiff suffered damages from his illegal termination, including loss of wages and benefits, embarrassment, emotional distress, court costs, and legal fees.

77. Pursuant to *42 U.S.C. § 2000e-5(k)* and *42 U.S.C. § 1988(b)*, this Honorable Court may award the prevailing party reasonable attorney's fees as part of the costs.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award him damages in the form of lost wages and benefits, punitive damages, costs, attorney's fees, interest, and order immediate reinstatement to his previous position under terms at least as favorable as available to him under his previous employment or enter any other Order this Honorable Court finds to be in the interest of justice.

### COUNT III – RELIGIOUS DISCRIMINATION IN CONTRAVENTION TO THE PENNSYLVANIA HUMAN RELATIONS ACT- FAILURE TO ACCOMMODATE

78. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

79. Pursuant to § 5 of the Pennsylvania Human Relations Act as Amended, it is an unlawful discriminatory practice for any employer to refuse to hire, discharge from employment, or otherwise discriminate against an individual with respect to terms, conditions, or privileges of employment on the basis of religious creed. *43 P.S. § 955*.

80. Analysis of cases of employment discrimination brought pursuant to the Pennsylvania Human Relations Act follow the framework established under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

81. The Plaintiff bears the burden of proof in establishing a *prima facie* case that 1) he holds a sincere religious belief; 2) the sincere religious belief conflicts with a job requirement, 3) he informed the employer of the conflict; and 4) he was disciplined for failing to comply with the requirement.

82. Plaintiff has sincerely held religious beliefs, founded upon the teachings of Jesus Christ and the writings found in the Holy Bible and Catholic Catechism, that prevent him from accepting the Covid-19 vaccine.

83. Defendant's mandatory Covid-19 vaccination policy was in direct conflict with Plaintiff's sincerely held religious beliefs.

84. Plaintiff informed the Defendant of this conflict when he filed for a religious exemption request based upon his sincerely held religious beliefs.

85. Courts are not arbiters of scriptural interpretation; and by inference, neither are employers. *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981).

86. Defendant failed to engage the Plaintiff in the interactive process to inquire about possible accommodations despite the fact that the Plaintiff was already complying with all of the Defendant's policies and safety protocols, including those Defendant itself designed to mitigate against the transmission of the Covid-19 virus.

87. Defendant denied Plaintiff's request for a religious exemption because it claimed that providing any accommodation would pose an undue hardship upon Defendant County.

88. Defendant subsequently disciplined Plaintiff for not accepting the vaccine when it terminated him from his position as an Electrician.

89. Based upon these averments, Plaintiff has set forth a *prima facie* case for employment discrimination under the Pennsylvania Human Relations Act. *General ElectricCorp. V. Pennsylvania Human Relations Comm*, 365 A.2d 649 (Pa. 1976 ); *School Dis. Of Phila. V. Friedman*, 507 A.2d 882 (Pa. Cmwlth. 1986).

90. Therefore, the burden then shifts to Defendant to establish that there is a valid basis for the employment action. *Amtrak v. Pennsylvania Human Relations Comm.*, 452 A.2d 301 (Pa. Cmwlth. 1982).

91. The Defendant acknowledged the sincerity of Plaintiff's sincerely held religious beliefs through its agent's, Ellen Buannic's, summary of her meeting with Plaintiff.

92. At no time was an effective interactive process meeting conducted to discuss what possible accommodations could be provided or whether the then current accommodations could be continued.

93. Since an interactive process meeting did not occur, Defendant failed to engage with Plaintiff to determine whether accommodations were possible.

94. The only existing evidence at the time of the Defendant's denial of Plaintiff's religious exemption request was that he held fundamental sincerely held religious beliefs that precluded him from accepting the Covid-19 vaccine.

95. Plaintiff believes and therefore avers that Defendant discriminated against him on the basis of his religion by failing to accommodate his sincerely held religious beliefs.

96. Pursuant to *43 P.S. § 959*, interest, attorney's fees, and punitive damages are available remedies for violations of the Pennsylvania Human Relations Act.

97. Plaintiff suffered damages from his illegal termination, including loss of wages and benefits, embarrassment, court costs, and legal fees.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award him damages in the form of lost wages and benefits, costs, punitive damages, interest, attorney's fees, and order immediate reinstatement to his previous position under terms at least as favorable as available to him under his previous employment or enter any other Order the Honorable Court finds to be in the interest of justice.

### COUNT IV – RELIGIOUS DISCRIMINATION IN CONTRAVENTION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – DISPARATE TREATMENT

98. The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

99. The Pennsylvania Human Relations Act prohibits employers from treating people of faith differently from similarly situated individuals. *Mobley v. Coleman*, 110 A.3d 216 (Pa. Cmwlth. 2015).

100. A Plaintiff must initially set forth a *prima facie* case of discrimination on the basis of religion as held in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and subsequently adopted by the Pennsylvania Supreme Court. *Garner v. Pennsylvania Human Relations Commission*, 16 A.3d 1189 (Pa. Cmwlth. 2011).

101. In order to establish a *prima facie* case, the Plaintiff must establish that 1) he was a member of a protected class; 2) he suffered an adverse employment action; and 3) similarly situated persons outside of the protected class were treated more favorable than him. *Spanish Council of York, Inc. v. Pennsylvania Human Relations Comm.*, 879 A.2d 391 (Pa. Cmwlth 2005).

102. Plaintiff is a practicing member of the Roman Catholic Faith who has sincerely held religious beliefs.

103. Plaintiff had been continuously employed by Defendant since August 26, 2013, as an Electrician and has performed his duties at the work place of Defendant in a satisfactory manner.

104. Plaintiff complied with the requirements of the Defendant's COVID-19 and safety policies at all times.

105. Plaintiff believes and therefore avers that other workers who did not hold sincerely held religious beliefs, but who applied for exemptions for other reasons, also followed the Defendant's COVID-19 and safety policies.

106. The Plaintiff applied for a religious exemption from the Defendant's mandatory Covid-19 vaccination policy.

107. Defendant denied Plaintiff's request for a religious exemption because it claimed that all accommodations would be an undue hardship upon the Defendant.

108. Defendant failed to engage the Plaintiff in the interactive process to inquire about other possible accommodations or whether the then currently employed Covid-19 safety protocols could be continued.

109. The Defendant terminated the employee on December 1, 2021, because of his sincerely held religious beliefs.

110. It is believed and therefore averred that other employees who were not religious, but requested exemptions from the Defendant's Covid-19 vaccination policy for other reasons, were not terminated because of the COVID-19 mandatory vaccination policy.

111. It is believed and therefore averred that additional individuals whose requests for religious exemptions were uniformly denied based upon the allegation that no accommodations were possible, were all directly terminated or constructively terminated because of their sincerely held religious beliefs.

112. The adverse effect of termination disproportionately fell upon those individuals, including Plaintiff, who exercised their religious beliefs but whose exemption requests were uniformly denied.

113. Plaintiff suffered an adverse employment action when his employment was terminated effective December 1, 2021.

114. Plaintiff believes and therefore avers that he was unlawfully discriminated against by Defendant in violation of Pennsylvania law when he was disparately treated in

comparison to other similarly situated employees who were not religious and therefore outside of his protected class.

115. Plaintiff suffered damages from his illegal termination, including loss of wages and benefits, embarrassment, court costs, and legal fees.

116. Pursuant to *43 P.S. § 959*, interest, attorney's fees, and punitive damages are available remedies for violations of the Pennsylvania Human Relations Act.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff damages in the form of lost wages and benefits, costs, punitive damages, interest, attorney's fees, and order immediate reinstatement to his previous position under terms at least as favorable as available to him under his previous employment or enter any other Order the Honorable Court finds to be in the interest of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter Judgement in his favor and against Defendant and award him the following relief:

a. Award him lost wages and benefits plus interest;

b. Award him punitive damages;

c. Order immediate reinstatement of him to previous position under terms at least as favorable to him;

d. Award him costs and counsel fees; and

e. Award any additional and further relief this Honorable Court deems in the interest of justice.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

Date:   January 30, 2023

s/ John A. Daller

John A. Daller
Attorney for Plaintiff
PA No. 329356
Daller Law Firm
PO Box 162
510 Pittsburgh Street
Mars, PA 16046
(724) 201-2050
johndaller@daller-law.com